AT

# DES MOINES, MARCH TERM, A. D. 1887,

IN THE FORTY-FIRST YEAR OF THE STATE.

PRESENT:

Hon. AUSTIN ADAMS, Chief Justice.
" WILLIAM H. SEEVERS,
" JOSEPH R. REED,  } Judges.
" JAMES H. ROTHROCK,
" JOSEPH M. BECK.

---

## THE STATE v. STRUBLE.

1. **Criminal Practice:** DISMISSAL OF PART OF CHARGE DURING TRIAL. Defendant was charged in the indictment with burglary, and also with an assault with intent to murder, but the latter charge was made only for the purpose of bringing the burglary within § 3892 of the Code, and thus aggravating the offense. There was a plea of not guilty, and also of former acquittal, the latter plea having reference to the charge of assault with intent to murder. After the trial had commenced, the state filed a motion for leave to dismiss as to the charge of assault with intent to murder, and to proceed as to the charge of burglary. *Held* that the motion was properly sustained.

2. **Criminal Evidence:** IMMATERIAL: NO PREJUDICE—NO REVERSAL. This court will not reverse a judgment of conviction on account of the

The State v. Struble.

admission of immaterial evidence, where it clearly appears that the defendant could not have been prejudiced thereby.

3. ——: BURGLARY: SUBSEQUENT ACTS OF CO-DEFENDANT: RES GESTÆ. Where one of three defendants, jointly indicted for burglary and the larceny of a trunk, was on trial, evidence that the other two defendants were seen on the night of the burglary, and a few hours thereafter, driving about in a buggy near the place where the stolen trunk was found by the sheriff, was admissible as tending to show, with other evidence, that they had put the trunk where it was found, which, if true, was a part of his transaction of the burglary.

4. Criminal Law: COMPULSORY EXAMINATION OF DEFENDANT'S PERSON: WHAT IS NOT. An examination of the defendant's person, while in jail, by a physician, cannot be said to have been compulsory, where the only evidence of compulsion was that the sheriff accompanied the physician, but it was not shown that he did or said anything in respect to the examination.

5. Criminal Evidence: BURGLARY: EVIDENCE AS TO CHARGE WITHDRAWN. On a trial for burglarly, where an assault with intent to murder had been charged by way of aggravation, but that charge had been withdrawn, held that evidence of a former acquittal of the defendant on that charge was properly excluded.

*Appeal from Monona District Court.*

THURSDAY, MARCH 3.

THE defendant, Frank Struble, was jointly indicted with Thomas Struble and John McBride. They were charged with having broken and entered the dwelling-house of one Dr. W. W. Ordway, in Monona county, and in the night time, with intent to steal and carry away from the house the goods and property of Ordway. They were also charged with having assaulted Ordway with intent to murder him. The defendant, Struble, was tried alone. He entered a plea of not guilty, and also a plea of former acquittal. After the trial had commenced, the state elected to proceed upon the charge alone of having entered the dwelling-house in the night-time, with intent to commit larceny, and filed a motion to dismiss as to the charge of assault with intent to commit murder. The court sustained the motion, and the trial proceeded, and resulted in a verdict of guilty. Judgment of

imprisonment for twelve years having been entered upon the verdict, the defendant appeals to this court.

*G. W. Cooper*, for appellant.

*S. M. Marsh*, *A. J. Baker*, Attorney-general, *G. W. McMillan* and *John S. Monk*, for the State.

ADAMS, CH. J.—I. The defendant insists that the court erred in sustaining the motion of the state to dismiss as to a portion of the matter charged in the indictment.

1. CRIMINAL practice: dismissal of part of charge during trial.

His proposition is that, after a trial has been entered upon, no part of the indictment can be withdrawn from consideration of the jury without the consent of the defendant. He relies upon *Com. v. Jenks*, 1 Gray, 490; *Com. v. Tuck*, 20 Pick., 356; *Com. v. Scott*, 121 Mass., 33; *State v. Callendine*, 8 Iowa, 288. The former acquittal relied upon was an acquittal of an assault with an intent to commit murder. The motion by the state for leave to dismiss was as to that charge, leaving the charge of burglary in the indictment without the aggravating circumstance that it was accompanied by an assault, which circumstance, if it had been properly proved in connection with the burglary, would have justified the court in inflicting a greater punishment. Code, § 3892. The reason which the state had for dismissing as to the charge of assault probably wâs that it was satisfied that the defendant's plea of former acquittal as to that charge was good. The defendant's theory is that, the trial having once commenced, it was his right to be tried and acquitted of both charges, whereas the state, by dismissing as to the assault with intent to commit murder, leaves that charge undisposed of which he had once prepared himself to meet. But the case has this peculiarity: that the charge of assault, etc., seems to have been made merely for the purpose of bringing the charge of burglary within the provisions of section 3892, above cited. We think that, if the state had become satisfied for any reason that the convic-

tion for the crime of burglary could not be had under that section, it was the right of the state to simplify the case by withdrawing the charge of assault, etc. In our opinion, the court did not err in sustaining the motion.

II. On the night of the second of January, 1885, the dwelling-house of the prosecuting witness was entered by three men, and a trunk was taken therefrom, containing promissory notes and other papers of very large value. The evidence tended to show that the trunk was taken to the residence of the defendant, Frank Struble, and a part of the contents burned; that afterwards the trunk and part of the contents were taken to a secluded place some miles distant, and left. The number of persons engaged in the commission of the crime was three. The defendants were all debtors of the prosecuting witness, being liable to him upon some of the promissory notes which were destroyed. The court allowed evidence to be given of certain acts of Thomas Struble, a brother of the defendant Frank Struble, done three or four days after the burglary. The trunk had been carried to a place near the head of a stream, called the Beaver, and left there, where it had become covered with snow, except that the ends of iron hoops with which the trunk had been bound had been partially detached, and protruded above the snow. The sheriff, in going out to search for the trunk, took Thomas Struble in his sleigh with him, and, while searching near where the trunk was, Thomas was the first one to discover the iron hoops protruding above the snow. The defendant complains of the admission in evidence of these acts of Thomas. His position is that the acts at most were the acts of an alleged conspirator, and were done long after the transaction which constituted the alleged crime. The evidence appears to have been introduced by the state for the purpose of showing that Thomas knew where the trunk was, and so was one of the three who were engaged in the burglary.

Conceding that the evidence was immaterial, it is difficult

2. CRIMINAL evidence: immaterial: no prejudice—no reversal.

to see how the defendant could have been prejudiced by it. It is not shown that Thomas Struble guided the sheriff to the place where the trunk was, or ·that the sheriff found the place by reason of anything which Thomas said. The most that is shown is that the sheriff had a talk with Thomas, and afterwards went to hunt for the trunk, and took Thomas with him, and, while hunting, Thomas was the first to see the iron hoops. This, without something more, had no tendency to implicate Thomas nor the defendant, and we are unable to see how the jury could have supposed that it did. There may, of course, have been something in Thomas' words or acts which the evidence does not disclose; but, so far as we can see, Thomas went with the sheriff at his request, and searched with the sheriff where the sheriff thought best to search, and happened, as any person might, to discover what he did. If this evidence could be regarded as having any significance, it would seem to tend to show Thomas' innocence, and overthrow the theory of the state in regard to a conspiracy between these brothers. We cannot reverse on account of the admission of immaterial evidence, where it clearly appears that the party objecting could not have been prejudiced.

III. The defendant assigned as error the admission of other evidence of Thomas' acts, and of the acts of John McBride. About two o'clock of the night of the burglary, Thomas Struble and McBride were seen driving about in a buggy several miles from home, and not far from the place where the trunk was found. The defendant contends that the evidence of these acts was inadmissible, because they were done after the alleged burglary. ·The theory of the state, of course, was that Thomas and McBride were out trying to make a disposition of the trunk in a place remote from the residence of the guilty parties. In our opinion, the fact that they were seen driving with a buggy in the neighborhood of that place at such an hour was a circumstance to be taken in connection with other evidence tending to show that Thomas and

3. ——— : burglary : subsequent acts of co-defendant : res gestæ.

McBride put the trunk where it was found, for the purpose of misleading and averting suspicion. Now, if they did this, their acts on the same night about two hours after the burglary, in endeavoring to mislead and avert suspicion from the guilty parties, by depositing the trunk in a remote place, was a part of the transaction which in the burglary was committed. We think that the court did not err in admitting the evidence.

IV.  Dr. Harman, a physician, was called as a witness in behalf of the state, and testified to having made an examin-

4. CRIMINAL law : compulsory examination of defendant's person : what is not.

ation of the face and neck of the defendant when in jail, and to having found several scratches. Dr. Ordway, the prosecuting witness, had already testified to having had a struggle with one of the persons who entered the house, and he thought he caught him by the face and neck. The defendant did not object to the admission of the testimony of Dr. Harman, but he insists that there was error in admitting it. He claims that the testimony was in respect to an examination to which the defendant was compelled to submit, and that such examination was in violation of the defendant's constitutional rights, and that, being such, the admission of the testimony was error, even though not objected to. Without considering the legal questions suggested, it is sufficient to say that we see no evidence that the defendant was compelled to submit to an examination. It is true, the evidence shows that, when Dr. Harman went into the jail, the sheriff accompanied him, but there is no evidence that the sheriff did or said anything in respect to the examination. We think that there was no error in admitting the evidence.

V.  The defendant offered in evidence the record of the district court, showing that he had been tried upon the charge

5. CRIMINAL evidence: burglary: evidence as to charge withdrawn.

of an assault with intent to commit murder. Upon objection by the state, the court excluded the evidence. The defendant complains of the exclusion of the evidence as error. In the indictment, the defendant was charged with burglary; and while it

is true that in the first place the defendant was charged also with an assault with intent to murder, yet the same was charged only as an aggravating circumstance, so as to bring the charge of burglary within the provision of section 3892 of the Code, and this charge of assault with intent to commit murder had afterwards been withdrawn. The former acquittal, then, had nothing to do with the charge upon which he was being tried, and the court, we think, rightly excluded the evidence of the former acquittal.

We have examined all the objections argued, and have to say that we think that they are without foundation. The evidence, to our mind, was amply sufficient to sustain the verdict, and the judgment of twelve years' imprisonment, we think, is not excessive.

AFFIRMED.